1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CYNTHIA MAYO, | ) | 1:11-cv-00378 LJO GSA |
| Plaintiff, | ) | **FINDINGS AND RECOMMENDATIONS** |
| | ) | **REGARDING PLAINTIFF'S SOCIAL** |
| v. | ) | **SECURITY COMPLAINT** |
| | ) | |
| MICHAEL ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Cynthia Mayo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District Court.

//
//

1

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed applications for benefits in November 2008, alleging disability as of December 13, 2007.  AR 214-225.  Plaintiff's applications were denied initially and on reconsideration; she then requested a hearing before an Administrative Law Judge ("ALJ").  AR 144-154.  ALJ John Cusker held a hearing and subsequently issued an order denying benefits on May 28, 2010, finding Plaintiff was not disabled.  AR 20-28.  On January 6, 2011, the Appeals Council denied review.  AR 1-3.

### Hearing Testimony

ALJ Cusker held a hearing on April 9, 2010, in Fresno, California.  Plaintiff appeared and testified; she was assisted by attorney Jeffrey Milam.  Medical Expert ("ME") Michael Gurvey and Vocational Expert ("VE") Jose Chaparro also testified.  AR 40-113.

#### *Plaintiff's Testimony*

Plaintiff was born August 25, 1952, and was fifty-seven years old at the time of the hearing.  AR 47.  She is not married.  AR 47.  Plaintiff currently lives in an apartment in Merced; she does not contribute to the rent.  AR 102-103.  Rather, through a church sponsored program, the church pays her rent.  AR 103.

After high school, Plaintiff completed a vocational nursing program at Merced Junior College; her license is no longer current.  AR 48, 106.  Plaintiff has a driver's license and is able to drive.  AR 48.

Plaintiff last worked as a marketing director or sales representative for the Courtyard at Merced, an assisted living community.  Prior to that position, she performed sales work and also worked in other assisted living facilities. AR 49.  On December 13, 2007, Plaintiff "cleared [her] throat and [her] entire lower back went into a severe muscle spasm."  She has not worked since that date. AR 91-92.  When asked what limits her ability to work today, Plaintiff indicated

---

[1]References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

that her chronic low back pain and weakness, inability to "lift anything significant," the need to lie down and elevate her legs during the day, and inability to sit comfortably, prevent her from working.  AR 92.  Additionally, she suffers from trigger thumbs, which make it difficult for her to properly grasp items or to write for any length of time.  AR 92.  Surgery has not been recommended for either her back or hands; however, injections for the trigger thumb condition have been recommended, but not performed.  AR 95, 104.

Plaintiff takes a number of both prescription and over the counter medications to treat muscle spasms, ulcers, irritable bowel syndrome, hay fever and allergies, arthritis, migraines and diarrhea.  AR 93.  She uses ice packs almost daily on her back.  AR 94.  The medications do not relieve her pain all the time.  The medication taken to treat irritable bowel syndrome does control her symptoms by relieving cramping, although she is still using the restroom six to seven times a day.  AR 95.  That medication does make her drowsy.  AR 96.

When asked the farthest distance she could walk, Plaintiff indicated she could walk one block before feeling as though she needed to stop as a result of the pain in her lower back.  AR 96, 103.  She can stand for ten to fifteen minutes at a time.  AR 96, 103.  She cannot bend from the waist down; she can kneel.  AR 97.

The trigger thumbs condition affects both hands.  Plaintiff's right hand is dominant and the trigger thumb interferes with her ability to grip things, for example unscrewing a jar or opening a can, or writing with a pen.  AR 97.  The condition does not affect her ability to feel things with her hands.  AR 98.  She could grasp and finger for five minutes before having to stop and rest for fifteen minutes to one half hour.  AR 105.

Plaintiff indicated the heaviest weight she could lift is about two or three pounds.  AR 98, 103-104.  She can lift a gallon of milk, but does not do so because it is difficult.  AR 104.  Plaintiff estimated the longest period of time she could sit was a half an hour or forty-five minutes.  AR 98.

3

1   With regard to activities of daily living, Plaintiff is able to care for herself, and uses the

2   microwave to cook.  AR 99.  When she gets up in the morning, she takes a hot shower to relax

3   her back muscles, then she lies down in bed and performs stretching exercises recommended by a

4   physical therapist.  AR 99.  She eats a small breakfast and takes her medications, then reads her

5   bible and prays as a part of her daily devotion.  AR 99.  After lunch, Plaintiff will talk on the

6   telephone or do light housework, including laundry and dusting and vacuuming.  AR 99-100.

7   Typically when she goes shopping, she asks that the shopping bags be packed lightly, but it does

8   not always occur.  She usually shops with someone else as she does not have a car, and that

9   individual helps by lifting and carrying her shopping bags.  AR 100.

10   While she does not have any hobbies, Plaintiff does attend church regularly on Sunday

11   mornings and Wednesday evenings.  AR 100-101.  Services last between an hour and two hours,

12   and she sits and stands throughout.  AR 101.  Occasionally while attending services, Plaintiff has

13   had to elevate her foot or leave services early; on other occasions she missed services altogether

14   because of her physical condition.  AR 101-102.  Plaintiff used to be physically active, working

15   out in a gym, distance walking, and participating in church functions, including set up and clean

16   up.  AR 102.

17   Plaintiff answered "I don't know" in response to an inquiry by her attorney about whether

18   she has problems with fibromyalgia.  AR 104-105.  When she was asked about pain other than in

19   the lower back and thumbs, Plaintiff indicated her knees hurt, pop, and crack, and they are the

20   reason she takes supplements for arthritis.  She also feels pain in both shoulders, elbows and

21   ankles.  AR 105.  She feels significantly fatigued, more so than after a hard day's work, and she

22   does not wake rested.  AR 108.

23   ### ME's Testimony

24   Dr. Gurvey testified as an expert in orthopedics and as a qualified medical physician and

25   surgeon.  AR 55-59.  With regard to Plaintiff's low back problems or complaints, Dr. Gurvey

26   noted those complaints are supported by but one x-ray that "is essentially negative."  AR 52.  The

27

28   4

doctor indicated that Dr. Sandoval's opinions are not supported by clinical findings, and in Dr. Gurvey's opinion, Dr. Sandoval's examination was not very thorough, nor was it neurological in nature.  AR 53-54.

With regard to the diagnosis of diffuse osteopenia as reflected on the x-ray of Plaintiff's lower spine, Dr. Gurvey explained that the mere presence of osteopenia is not significant, unless it were accompanied by fractures.  AR 59-60.  Osteopenia without fractures "is not a source of back pain."  AR 70.  The x-ray also showed no significant degenerative disease.   The notation to probable slight degenerative arthritis of the lower lumbar facet joints is "really very insignificant" in Dr. Gurvey's opinion.  AR 61.  The doctor described the x-ray as "a very insignificant report." AR 61.

Asked to provide a diagnosis based upon his review of the medical record as provided, Dr. Gurvey indicated Plaintiff has a history of chronic low back pain with no specific diagnosis. Only minor changes are reflected in the facet joints according to the x-ray.  There are no orthopedic evaluations, nor neurological or neurosurgical evaluations.  AR 62.  The record does not contain an MRI or CT scan, nor an electrodiagnostic procedure.  AR 62.

Dr. Gurvey opined that Plaintiff's medical impairments, individually or in combination, do not meet or equal any of the listing impairments, and in particular, Listings 1.04 and 14.09. AR 63-65.  With regard to the state agency assessment, Dr. Gurvey opined that the medical record did not support the severity of postural limitations assigned.  His limitation would be to occasional crawling and climbing of ladders, ropes and scaffolds.  AR 65-66.

Asked to provide an assessment of Plaintiff's residual functional capacity ("RFC") based upon the record provided, and with specific regard to orthopedic conditions only, Dr. Gurvey opined that Plaintiff could occasionally lift and carry fifty pounds, frequently lift and carry twenty-five pounds, without restriction on sitting, standing or walking, or pushing and pulling. She could occasionally crawl, occasionally climb ladders, ropes and scaffolds, but was otherwise without restriction.  AR 66-67, 73.

1   When asked about nurse practitioner Jeff Armstrong's questionnaire of August 2009 and

2 the marked limitations found therein, Dr. Gurvey indicated the medical evidence does not

3 support the limitations identified by Mr. Armstrong.  AR 77-79.

4       ***VE's Testimony***

5   VE Chaparro identified Plaintiff's past work to include: office manager, DOT[2] 169.167-

6 034, sedentary and skilled, with an SVP[2] of seven; sales manager, DOT 163.167-018, sedentary

7 and skilled, with an SVP of eight; and licensed vocational nurse, DOT 079.374-014, medium and

8 skilled with an SVP of six; receptionist, DOT 237.367-038, sedentary and semiskilled with an

9 SVP of four; and finally, dental and medical equipment and supplies sales representative, DOT

10 279.257-010, light and skilled with an SVP of six.  AR 81-82.  With regard to the two sales

11 representative positions held by Plaintiff, one was performed at medium and the other at heavy.

12 AR 83-86.

13   The VE indicated that Plaintiff's skills related to her work as a licensed practical nurse -

14 such as medication administration and phlebotomy duties - could transfer to light work, however,

15 VE Chaparro did not believe the skills Plaintiff obtained in her previous work as a sales and

16 marketing manager would transfer.  AR 86-88, 106-108.

17   In the first hypothetical question, the VE was asked to consider an individual who has the

18 ability to occasionally lift and carry twenty pounds and frequently lift and carry ten pounds, who

19 can sit, stand and/or walk for six hours in an eight-hour day with normal breaks, without

20 limitation regarding pushing or pulling, who may occasionally climb ramps and stairs, ladders,

21 ropes and scaffolds, can frequently balance, kneel and crawl, and occasionally stoop and crouch.

22 AR 88.  VE Chaparro indicated such an individual could perform Plaintiff's past work as an

23 office manager, sales manager, sales representative, and receptionist as typically performed.  The

24

25 ————————

26   [2]"DOT" refers to the Dictionary of Occupational Titles.

27   [2]"SVP" refers to Specific Vocational Preparation.

28         6

1   individual could not perform the sales manager or sales representative positions as Plaintiff

2   actually performed them.  AR 88-89.

3       In a second hypothetical, the VE was asked to consider an individual who is able to sit for

4   thirty minutes at a time, or two hours with alternate changes in position in an eight-hour day,

5   stand or walk for sixty minutes at a time, or four hours with alternate changes in position in an

6   eight-hour day, with the ability to elevate legs as needed.  AR 89.  VE Chaparro indicated such

7   an individual would be unable to perform Plaintiff's past relevant work.  AR 89-90.

8       Plaintiff's counsel added a limitation of the need to use the restroom for fifteen to thirty

9   minutes at a time, and the need to lie down or elevate the legs for thirty minutes at one time.  The

10  VE indicated neither limitation would permit the individual to perform Plaintiff's past work or

11  any other work.  AR 90-91.

12  **Medical Record**

13      The entire medical record was reviewed by the Court.  AR 315-464.  The medical

14  evidence will be referenced below as necessary to this Court's decision.

15  **ALJ's Findings**

16      Using the Social Security Administration's five-step sequential evaluation process, the

17  ALJ determined that Plaintiff did not meet the disability standard.  AR 20-28.

18      More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful

19  activity since December 13, 2007.  AR 22.  Further, the ALJ identified low back pain secondary

20  to osteoarthritis of the lumbar spine and trigger thumb as severe impairments.  AR 22-23.

21  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments or combination

22  of impairments did not meet or exceed any of the listed impairments.  AR 23.

23      Based on his review of the entire record, the ALJ determined that Plaintiff has the RFC to

24  lift and carry twenty pounds occasionally and ten pounds frequently, to sit, stand and/or walk for

25  six hours in an eight-hour day, and to occasionally climb, stoop, crouch, kneel, crawl and

26  balance.  AR 23-27.

27

28                          7

Next, the ALJ determined that Plaintiff was capable of performing her past relevant work as a sales manager or sales representative as generally performed, and she was further capable of performing her past work as an office manager, both as actually performed and as generally performed.  AR 27.  Thus, the ALJ concluded Plaintiff was not disabled.  AR 27-28.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age,

1  education, and work experience, engage in any other kind of substantial gainful work which

2  exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

3  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

4  Cir. 1990).

5     Here, Plaintiff argues that the ALJ (1) improperly evaluated the medical evidence; (2)

6  erred in evaluating Plaintiff's credibility; (3) improperly rejected lay testimony; and (4)

7  committed error at step four regarding Plaintiff's ability to perform her past work.

8                              **DISCUSSION**[3]

9          ***The ALJ's Evaluation of the Medical Evidence***

10    Plaintiff contends the ALJ erred in a number of ways when evaluating the medical

11  evidence, including an improper analysis at step two of the sequential analysis, improperly

12  assessing the opinion evidence, and failing to develop the record.  (Doc. 16 at 14-22.)  Defendant

13  contends the ALJ properly evaluated the medical evidence.  (Doc. 17 at 6-12.)

14          **A.    *Step Two Analysis***

15    Plaintiff contends the ALJ erred in failing to find her fibromyalgia, irritable bowel

16  syndrome, and migraines to be severe impairments at step two of the sequential analysis.  (Doc.

17  16 at 14-16.)  Defendant asserts Plaintiff misapprehends the requirements at step two of the

18  evaluation, and that the ALJ committed no error.  (Doc. 17 at 11-12.)

19    At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff

20  suffers from a "severe" impairment.  The regulations define a non-severe impairment as one that

21  does not significantly limit a claimant's physical and mental ability to do basic work activities.

22  An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more

23  than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290

24

25    [3]The parties are advised that this Court has carefully reviewed and considered all of the briefs, including

26  arguments, points and authorities, declarations, and/or exhibits.  Any omission of reference to a specific argument or
    brief is not to be construed that the Court did not consider the argument or brief.

27

28                              9

(9th Cir. 1996).  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508, 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. §§ 404.1529, 416.929.  An overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled.  *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).  The ALJ must consider the combined effect of all of the claimant's impairments on his or her ability to function, without regard to whether each alone was sufficiently severe.  42 U.S.C. § 423(d)(2)(B).  The combined effect "shall be considered throughout the disability determination process."  *Id*.  The adjudicator's role at step two is further explained by SSR 85-28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

SSR 85-28.

### 1.    ALJ's Step Two Findings

ALJ Cusker determined the following at step two of the sequential analysis:

> The claimant has the medically determinable but non-severe physical impairments of history of intermittent migraine headaches, history of treatment for acute abdominal pain, gastritis, and irritable bowel syndrome (IBS), and vaginitis that do not satisfy the statutory duration requirements; no examining or treating source opinion indicates that any of these medically determinable conditions have more than a minimal effect on her ability to work.
> The claimant complained of migraine headaches on November 1, 2007 to Barbara Showalter, M.D.; she reported that they occurred a couple of times per week; the claimant preferred herbal natural treatment that had worked in the past. Dr. Showalter noted that even though the claimant felt that she could not work

because her migraine type headaches were too frequent and unpredictable, she did not want to take prescription medication. I am not persuaded by Dr. Showalter's indication that the claimant's migraine headaches were disabling through August 1, 2008, as she did not refer the claimant to a neurologist, even though the claimant claimed her headaches lasted a couple of days at a time; the claimant refused standard prescription medication; there was no clinical finding or test results to support the diagnosis of "migraines," it was based on the claimant's self-report.

Dr. Showalter diagnosed IBS and placed the claimant on Bentyl; she sent the claimant to the emergency department of Mercy Medical Center (hereafter MMC) for acute abdominal pain on October 27, 2008; the claimant was not in acute distress when examined; her abdomen was relatively soft. There was no specific diagnosis from laboratory tests. Prevacid was added for gastroesophageal reflux disease (gastritis) in December 2008; laboratory rests were run again at MMC and were essential negative. On February 6, 2009, the clinician at MMC noted that the claimant was using Prevacid to relieve epigastric reflux symptoms; he opined that the claimant's herbal supplements may be the cause of her gastritis. By February 13, 2009 her dyspepsia was much better; cramping and diarrhea had resolved; she had no done the upper GI series or h. pylon test. The claimant mentioned IBS to her physical therapist on January 9, 2010.

The claimant testified she has "ulcers." There is no medical evidence that she had this condition, which is not the same as gastritis or IBS. She testified that she has to go to the bathroom frequently. Her attorney was more specific when he asked the vocational expert to add 6 to 7 trips to the bathroom of 30 minutes each to the hypothetical residual functional capacity, although that is not documented in the medial record. Indeed, objective evidence of GI problems shows treatment for acute symptoms in late 2008; there is suggestion that her problems may result from too much herbal medication; no treating source says these problems are disabling. I find that the claimant's allegations of severe impairment due to IBS could not reasonably be expected from the medically determined impairments of record.

AR 22-23, internal citations omitted.

## 2.    Analysis

Plaintiff's argument lacks merit. With regard to both the IBS and migraines, the evidence does not establish that these conditions have more than a minimal effect on Plaintiff's ability to work. As the ALJ found, Plaintiff's complaints are not supported by signs, symptoms, and laboratory findings. Rather, those complaints are supported only by Plaintiff's own statements, and her statements do not suffice. For but one example, the ALJ referenced Plaintiff's complaints of severe abdominal pain and the fact that Dr. Showalter referred Plaintiff to Mercy Medical Center's emergency department for treatment. Yet when Plaintiff was seen, she was in no apparent distress, there was mild tenderness to palpitation in her abdomen and laboratory

findings were inconclusive.  AR 341-353.  More particularly, emergency department findings included the following notations: "Based on the patient's presentation the patient once again came in with right upper quadrant pain and epigastric pain.  Differential includes the possibility of acute cholecystitis, possible pancreatitis, versus other differential diagnoses, which were considered as well. [¶] The patient once again was not in a lot of distress.  On abdominal exam the patient's abdomen was relatively soft."  AR 354.

The Court's review of the medical record finds substantial support for the ALJ's findings regarding Plaintiff's purported migraine headaches as well.  The headaches are reported by Plaintiff yet there is no objective evidence of migraine headaches that would significantly limit Plaintiff's physical and mental ability to do basic work activities.  Plaintiff's reporting of those migraines to her doctors as the reason she cannot work is not sufficient evidence to establish a severe impairment at step two.  20 C.F.R. §§ 404.1508, 416.929.

Further, the ALJ's reference to the durational requirement at this step is proper.  A person is disabled only if his impairments are severe and meet the durational requirement of twelve months.  20 C.F.R. §§ 404.1505, 404,1520(a).  The record appears to support the ALJ's conclusion that these medically determinable impairments, or some of them, did not last the required twelve month period.

With regard to Plaintiff's claim that the ALJ should have determined fibromyalgia to be a severe impairment, Plaintiff is wrong.  The Court notes that Plaintiff herself testified that she did not know whether she had problems associated with fibromyalgia.  *See* AR 104.  The record available to the ALJ did not include the required signs, symptoms and laboratory findings.  Most telling however, is Plaintiff's argument that the *ALJ* erred because evidence submitted to the *Appeals Council* confirmed a diagnosis of fibromyalgia.  But this evidence was never before the ALJ for consideration, and therefore could not have been considered by him.

1    Simply stated, Plaintiff did not meet her burden.  In sum, this Court has determined that

2    the ALJ's findings at step two of the sequential analysis are supported by substantial evidence

3    and are free of legal error.

4    **B.    *Medical Opinion Evidence***

5    Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

6    who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

7    (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

8    physicians).  As a general rule, more weight should be given to the opinion of a treating source

9    than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

10   647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another

11   doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

12   1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

13   doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

14   reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

15   F.2d 499, 502 (9th Cir. 1983).

16   The opinion of an examining physician is, in turn, entitled to greater weight than the

17   opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

18   *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

19   physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

20   uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion

21   of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

22   can only be rejected for specific and legitimate reasons that are supported by substantial evidence

23   in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

24   The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

25   that justifies the rejection of the opinion of either an examining physician or a treating physician.

26   *Pitzer v. Sullivan*, 908 F.2d at 506 n. 4; *Gallant v. Heckler*, 753 F.2d at 1456.  In some cases,

27

28                                                          13

1   however, the ALJ can reject the opinion of a treating or examining physician, based in part on the

2   testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55

3   (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.

4   1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a

5   treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to

6   reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752.

7   Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also

8   relied on laboratory test results, on contrary reports from examining physicians, and on testimony

9   from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

10                                *ALJ Cusker's Findings*

11          As for the opinion evidence, I reject the opinions of Salvador Sandoval,
     M.D., Dr. Showalter, and physician's assistant Jeff Armstrong. Dr. Sandoval,
12   using a verification of records form and a questionnaire, opined that the claimant
     has been disabled since February 23, 2010 due to diffuse osteopenia and
13   degenerative changes in the thoracic spine and probably fibromyalgia. He opined
     that she is precluded from even sedentary work based on the only x-ray in the file,
14   irritable bowel disorder and fibromyalgia with multiple trigger areas in the spine,
     trunk, extremities and limited range of motion. However, there is no report of
15   physical examination with map of trigger points or motion measurements;
     apparently he examined her during a weekly visit to a homeless shelter. Indeed,
16   there are no medical findings to support the fibromyalgia diagnosis, and Dr.
     Gurvey testified that the claimant's osteopenia is not per se disabling.
17          Mr. Armstrong completed a questionnaire for the claimant on August 5,
     2009 in which he noted that the claimant's chronic low back pain limits her ability
18   to lift and move patients as a nurse; he opined that the claimant is able to stand
     and walk for 60 minutes at a time and 4 hours within an 8 hour day but only gives
19   the x-ray and "typical limits given to any worker age 56" as his reasons. There are
     no clinical findings to support his opinion; he is not an acceptable medical source
20   and exceeds his competence in expressing an opinion about the claimant's ability
     to work.
21          I am not persuaded by Dr. Showalter's opinion expressed on a county
     welfare medical form on May 29, 2009, although she is an acceptable medical
22   source and was a treating physician. She opined that the claimant could do a
     training class without a problem or sedentary activity with some walking. As
23   pointed out by Dr. Gurvey, there are no physical exams with clinical signs in her
     clinical notes and the x-ray does not show significant osteoarthritis. According to
24   the claimant's testimony, the claimant stopped treatment with Dr. Showalter in
     2006; there are no clinical notes by Dr. Showalter in the medical evidence of
25   record after November 2008. Also, she appears to be addressing the claimant's
     most remote and physically demanding job of LVN, and is unaware that the
26   claimant has past relevant work that is sedentary. Her comments that the claimant
     is not able to do the type of lifting, pulling and pushing that she needed to do as a

27

28                                          14

licensed vocation[al] nurse (LVN), based on chronic back pain, is not helpful.

Substantial weight is given to the Physical Residual Functional Capacity Assessment of the state agency medical consultants which provided that the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand, and/or walk for 6 hours out of an 8 hour day, frequently balance, kneel, and crawl, occasionally stoop, crouch and climb ramps, stairs, ladders, ropes and scaffolds.  Supporting this assessment is their review of medical records and case analyses which noted the following: the claimant had marked tender lumbar spine, mild to moderate tenderness in her sacrum, mild weakness of the right hip flexor as well as low back pain on October 6, 2008; she could bend to 45 degrees and expressed pain with straight leg raises test, mild pain with heel and toe raise, but her neurological exam was normal in December 2008; x-ray showed slight degree of degenerative osteoarthritis in lower lumbar facet joints.

AR 26-27, internal citations omitted.

*Summary of Pertinent  Medical Evidence*

General practitioner Barbara Showalter, M.D., treated Plaintiff for approximately sixteen months from September 2007 to January 2009.  Plaintiff was generally treated for low back pain, abdominal pain and headaches.  Objective findings reflect predominately mild tenderness and weakness, and include negative straight leg raise findings.  Migraines are referenced alongside notations that Plaintiff prefers to treat the headaches with a herbal supplement.  *See* AR 325-339, 366-378.  In a medical report form completed in May 2009, Dr. Showalter diagnosed chronic low back pain with restrictions on lifting, pushing and pulling.  She indicated Plaintiff could perform sedentary work "with some walking."  AR 420.

General practitioner Salvador Sandoval, M.D., completed a questionnaire on April 6, 2010.  In his opinion, Plaintiff was precluded from performing sedentary work as the result of degenerative spine disease, irritable bowel disorder, and fibromyalgia.  Dr. Sandoval noted "multiple trigger areas spine, trunk, extremities; limited range of motion."  Dr. Sandoval estimated Plaintiff could sit for one half hour at a time, and could stand or walk for one hour, about ten to fifteen minutes at a time.  In Dr. Sandoval's opinion, Plaintiff's report as to bathroom frequency of six to seven trips for fifteen to thirty minutes at a time is "consistent with her condition, test results, clinical exams and statements . . .."  AR 453, 462.  In a progress note of that same date, Dr. Sandoval recorded Plaintiff's subjective complaints, and in the objective

findings portion of the note, checked the box "Abnl" or abnormal next to "Abdomen." The doctor then assessed degenerative joint disease, fibromyalgia and irritable bowel disorder. AR 461. In a medical report dated May 11, 2010, Dr. Sandoval opined that Plaintiff had a physical impairment that prevents her from engaging in work or training activities. He recorded diagnoses of degenerative arthritis of the spine, fibromyalgia, and irritable bowel syndrome. AR 454, 460; *see also* AR 459.

Additional medical evidence from Dr. Sandoval post-dates the ALJ's May 28, 2010, findings. That evidence includes the following: (1) a form entitled "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia" dated September 14, 2010, wherein Dr. Sandoval reported that Plaintiff's pain is compatible with fibromyalgia as it is present in eleven of eighteen tender points (AR 456; *see also* AR 457-458); and (2) a note directed "To whom it may concern" dated November 4, 2010, wherein Dr. Sandoval indicated Plaintiff "is not able to perform her usual job or any job duties because of fibromyalgia and degenerative osteoarthritis of her spine [and also] has irritable bowel syndrome" (AR 455).

Physician assistant Jeff Armstrong completed a questionnaire on August 5, 2009. He opined that Plaintiff was not precluded from sedentary work, but that her chronic low back pain "limits her opportunities in lifting & moving patients as an LVN." He further opined Plaintiff was precluded from occasionally lifting twenty pounds and frequently lifting ten pounds. Mr. Armstrong identified her primary impairments as degenerative joint disease of the lumbar spine and osteopenia, and identified an x-ray as the relative objective finding. He estimated Plaintiff could sit for thirty minutes at a time, and for two hours in an eight-hour day with the ability to change position. With regard to Plaintiff's ability to stand or walk, Mr. Armstrong opined she could stand or walk for sixty minutes at one time, and for four hours in an eight-hour day with the ability to change position. Mr. Armstrong also indicated Plaintiff must be allowed to elevate her legs on an as needed basis. AR 425.

1      *Analysis*

2            Here, ALJ Cusker gave specific and legitimate reasons for rejecting the contradicted

3      opinions of treating physicians Showalter and Sandoval in favor of the nonexamining, testifying

4      medical advisor, Dr. Gurvey.  Those specific and legitimate reasons include a lack of objective

5      medical evidence where the ALJ noted "there is no report of physical examination with map of

6      trigger points" and "no medical findings to support the fibromyalgia diagnosis" regarding Dr.

7      Sandoval's opinion.  Regarding Dr. Showalter's opinions, the ALJ noted "there are no physical

8      exams with clinical signs in her clinical notes and the x-ray does not show significant

9      osteoarthritis."[4]  A lack of supporting clinical findings is a valid reason for rejecting a treating

10     physician's opinion.  *Magallanes v. Bowen*, 881 F.2d at 751.  Moreover, an ALJ can reject the

11     opinion of a treating physician in part on the testimony of a nonexamining medical advisor like

12     Dr. Gurvey.  *See id.* at 751-55; *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d

13     179.

14            Additionally, with regard to the opinion of Dr. Sandoval as provided to and considered by

15     ALJ Cusker, the ALJ noted that Dr. Sandoval examined Plaintiff during a weekly visit to a

16     homeless shelter and provided his opinion by way of a form questionnaire.  AR 310, 452-453.

17     These too were proper reasons to discount Dr. Sandoval's opinion.  *See Batson v. Commissioner,*

18     *Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly discounted treating

19     physician's opinion where, *inter alia*, opinion was in form of checklist); *Ghokassian v. Shalala*,

20     41 F.3d 1300, 1303 (9th Cir. 1994) (treating relationship probably not established).

21            With regard to physician's assistant Jeffrey Armstrong, the ALJ determined that Mr.

22     Armstrong's opinion lacked clinical findings in support thereof.  *See* AR 425-426.  This is a

23     proper reason to discount a medical opinion.  *Magallanes v. Bowen*, 881 F.2d at 751.  Therefore,

24     Plaintiff's complaint that the ALJ erred by failing to consider Mr. Armstrong's opinion because

25

26            ─────────────────

27            [4]Earlier in his findings, the ALJ noted that Dr. Showalter's opinion also appeared to be based upon
       Plaintiff's own subjective report.  *See* AR 23.

28                                              17

1 | he is not a proper medical source misstates the record.[5]  While the ALJ did in fact find that Mr.

2 | Armstrong was "not an acceptable medical source and exceed[ed] his competence in expressing

3 | an opinion,"  that was not the only basis for his rejection of the opinion.

4 | ALJ Cusker explained that he afforded substantial weight to the opinions of the state

5 | agency medical consultants because their assessments were the result of a review of the medical

6 | record and case analyses.  More specifically, state agency physician L. Bobba, M.D., prepared a

7 | Physical Residual Functional Capacity Assessment on January 7, 2009, wherein the doctor

8 | concluded that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry

9 | ten pounds, sit, stand and/or walk for six hours in an eight-hour workday; push and pull without

10 | limitation; could frequently balance, kneel and crawl, and occasionally climb, stoop and crouch;

11 | without any manipulative, visual, communicative or environmental limitation.  AR 361-365.

12 | When the ALJ rejects the opinion of an examining physician in reliance on the

13 | non-examining physician, "reports of the nonexamining advisor need not be discounted and may

14 | serve as substantial evidence when they are supported by other evidence in the record and are

15 | consistent with it."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Saelee v. Chater*, 94

16 | F. 3d 520, 522 (9th Cir. 1996).   Here, the medical record supports the findings of the state

17 | agency physicians and those opinions are consistent with the medical record to the degree the

18 | state agency physicians found Plaintiff is capable of work.  Notably too, the state agency

19 | physician opinions comport with the opinion of nonexamining medical advisor Dr. Gurvey.

20 |

21 |

22 | [5]Plaintiff relies on SSR 06-3p to support her argument.  SSR 06-3p recognizes the recent movement towards increased care by "other sources," such as physician's assistants.  Specifically, "[o]pinions from these

23 | medical sources, who are not technically deemed 'acceptable medical sources' under [the] rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  There may be instances where the opinion of the physician's assistant is entitled to controlling

24 | weight over opinions of acceptable medical sources.  This determination depends on the particular facts of the case, and should include an examination of how long the source has known and how frequently the source has seen the

25 | individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area

26 | of expertise related to the individual's impairment(s), and any other factors that tend to support or refute the opinion. Here, ALJ Cusker determined that the physician assistant's opinion was not supported by relevant evidence.

27 |

28 |

1

### C.   *Duty to Develop the Record*

2      Next, Plaintiff complains the ALJ had a duty to develop the record further regarding her

3   various impairments.  (Doc. 16 at 16-17.)  Defendant disagrees.  (Doc. 17 at 12-13.)

4      It is Plaintiff's burden to produce full and complete medical records, not the

5   Commissioner's.  *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).  However, when the

6   evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the

7   evidence, the ALJ has a duty to develop the record.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150

8   (9th Cir. 2001).  The ALJ may discharge this duty in one of several ways, including subpoenaing

9   claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or

10   keeping the record open after the hearing to allow supplementation of the record.  *Id.*

11      Here, the ALJ conducted a thorough review of the entire record and thereafter made a

12   disability determination which is supported by substantial evidence.  Plainly he found the record

13   to be adequate for proper evaluation.  In fact, at the administrative hearing in this matter,

14   Plaintiff's counsel agreed at the outset of the hearing that the record was complete.  *See* AR 44.

15   Later, a discussion occurred between Plaintiff's counsel, Jeffrey Milam, and the ALJ at the

16   conclusion of the hearing.  Mr. Milam suggested an internist evaluate Plaintiff utilizing a trigger

17   point exam.  AR 112.  ALJ Cusker stated he would consider it and if he found that additional

18   evidence was necessary in that regard, he would "go ahead and set the appointments."  AR 112-

19   113.  Upon complete evaluation of the evidence, the ALJ obviously determined that the record

20   was adequate to make a determination.

21      Under these circumstances, the ALJ had no duty to further develop the record.

22   ### *The ALJ's Credibility Findings*

23      Plaintiff argues that the ALJ failed to properly evaluate her testimony because he did not

24   provide "the requisite specific, clear and convincing reasons for rejecting her testimony."  (Doc.

25   16 at 22-26.)  The Commissioner counters that the ALJ's credibility assessment was proper and

26   is supported by substantial evidence.  (Doc. 17 at 13-14.)

27

28                                         19

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), internal quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635, citation omitted.

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that

20

Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. There is no evidence of malingering. AR 24. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id.* "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id.*, citing *Magallanes v. Bowen*, 881 F.2d at 755. The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id.* at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id.* at 603.

ALJ Cusker made the following findings in this case:

> The claimant testified that she has chronic back pain and stiffness that limits her ability to work; she has trigger thumbs that make it hard to write and hard to grasp. In regard to treatment, the claimant stated that she does the following: she elevates her legs daily; takes medication for her muscles, ulcers, bladder, hay fever, allergies, arthritis, and migraine headaches, many of which are over the counter; she uses ice packs daily. The claimant advised that she had physical therapy between December 2009 and February 2010 that did not work; she does daily exercises while laying down.
> The claimant testified that although surgery for her back and thumbs has not been suggested, injections for her trigger thumbs have been recommended. In terms of physical capacity, the claimant testified that she can stand for 10 to 15 minutes at a time and sit for 30 to 45 minutes; she can stoop, kneel, or squat but cannot bend from the waist; it is hard for her to open jars but she can lift her hand bag which weighs 2 to 3 pounds and a gallon of milk. She uses her hands for 5 minutes and then rests for 15 to 30 minutes before using them again. In regard to activities of daily living, the claimant is able to care for herself, prepare simple meals, performing light housekeeping tasks including vacuuming, and shop[ping]; she attends church weekly for about 90 minutes and is able to sit, stand and kneel. The claimant reads several times per day and talks on the telephone.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extend they are inconsistent with the above residual functional capacity assessment.

AR 24. And,

[i]n regard to credibility, I note that the claimant alleged in her testimony limitations due to chronic low back pain, including the inability to lift anything, stiffness and weakness, and the need to take frequent bathroom breaks. As the medical expert correctly testified, there is minimal objective evidence of low back and thumb impairment. Only 1 x-ray was taken; the claimant's participation in physical therapy has been minimal. As noted above, the evidence of gastrointestinal problems does not indicate that the claimant needs frequent bathroom breaks. The claimant was treated for acute symptoms in late 2008, but a clinical notes suggests that her problems may be the result of too much herbal medication. No treating source indicates these problems are disabling.

AR 26.

ALJ Cusker cited a lack of objective medical evidence, inconsistency with the medical record as a whole, and conservative treatment as reasons for concluding Plaintiff's subjective symptom testimony was less than credible.

For instance, Plaintiff testified she suffers from chronic low back pain, weakness and stiffness, and yet there is but one x-ray in the medical record. That x-ray, completed December 15, 2008, revealed only "slight degenerative osteoarthritis of the lower lumbar facet joints without pars interarticularis defect." AR 451. Plaintiff testified she required numerous bathroom breaks as a result of irritable bowel syndrome (AR 95), however, the medical record does not support her claim. The ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995). Furthermore, the reasons provided are acceptable. *See, e.g.*, *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative

22

1    level of medical treatment has been found to suggest a lower level of pain and functional

2    limitations); *Smolen v. Chater*, 80 F.3d at 1284 (prior inconsistent statements); *Fair v. Bowen*,

3    885 F.2d at 603-04 (claiming severe conditions yet receiving minimal, conservative, or no

4    treatment is a basis to reject claimant's testimony).

5       Notably too, it is not the role of the Court to redetermine Plaintiff's credibility *de novo*.

6    Although evidence supporting an ALJ's conclusions might also permit an interpretation more

7    favorable to the claimant, if the ALJ's interpretation of evidence was rational, as here, the Court

8    must uphold the ALJ's decision where the evidence is susceptible to more than one rational

9    interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

10      In sum, this Court finds that ALJ Cusker's credibility findings convincingly justify his

11   rejection of Plaintiff's testimony. *Fair v. Bowen*, 885 F.2d at 602. Therefore, his findings are

12   supported by substantial evidence and are free of legal error.

13           ***The ALJ's Consideration of Lay Testimony***

14      Plaintiff contends the ALJ erred by failing to provide "specific, germane reasons for

15   rejecting several lay witness statements." (Doc. 16 at 26-28.) Defendant asserts that while the

16   ALJ did not specifically address the third party statements, his error was harmless. (Doc. 17 at

17   13.)

18      Lay witness testimony as to a claimant's symptoms or how an impairment affects a

19   claimant's ability to work is competent evidence which the Commissioner must take into

20   account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d

21   915, 919 (9th Cir. 1993). The ALJ may reject such testimony if he does so expressly, in which

22   case "he must give reasons that are germane to each witness." *Dodrill*, at 919. The ALJ need not

23   discuss lay witness testimony that pertains to whether or not an impairment exists. *Nguyen v.*

24   *Chater*, 100 F.3d at 1467. These medical diagnoses are beyond the competence of lay witnesses

25   and therefore do not constitute competent evidence. 20 C.F.R. § 404.1513(a). However, once an

26   impairment has been established by medical evidence, the extent of the diagnosed impairment

27

28                                               23

may be testified to by the lay witnesses.  20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  "If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

The lay witness statements at issue here appear in the Administrative Record at pages 306 through 309, and were marked as Exhibits 11E through 14E for purposes of the administrative proceedings.  The statements were provided by Loreen Carrabello, Mitzie Harris, Tawanna Ratzlaff, and Jaclyn Sears, respectively.  ALJ Cusker does not specifically address these statements, however, as marked exhibits the ALJ's reference to a "careful consideration of the entire record" (AR 22) would include these third party statements.

As recently explained in *Molina v. Astrue*, 674 F.3d 1104:

> Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se.

*Id*. at 1117.  Here, ALJ Cusker did not expressly comment on the four lay witness statements which were made a part of the record.  *See* AR 20-28.  However, this Court's review of the four statements reveals that none describe any limitations beyond that which Plaintiff herself described.  More particularly: all four statements reference Plaintiff's daily struggle with back pain; all four statements reference Plaintiff's problems sitting, standing, walking, lifting and bending; three of the four statements reference Plaintiff's difficulty carrying groceries; two of the four statements reference the need for Plaintiff to get to her knees in order to pick something up off of the floor; one of the four statements references Plaintiff's use of daily ice packs and medications; and finally, one of the four statements references Plaintiff's inability to further participate in church activities and the financial stress associated with not working.  Yet, all of

these symptoms or conditions was testified to by Plaintiff herself.  *Cf.* AR 92-94, 96-98, 100-104 to AR 306-309.

Because ALJ Cusker discussed at length and properly rejected Plaintiff's own credibility as discussed *ante*, any error in not expressly rejecting the four lay witness statements is harmless as the reasons for rejecting Plaintiff's credibility would apply equally well to the lay witness statements at issue here.  *Molina v. Astrue*, 674 F.3d at 1121.

### The ALJ's Findings at Step Four

Finally, Plaintiff contends the ALJ erred in finding she could perform her past relevant work as an office manager, sales manager, or sales representative.  (Doc. 16 at 28-30.) Defendant asserts the ALJ properly found Plaintiff could perform her past work.  (Doc. 17 at 14-16.)

At step four, the plaintiff has the burden of showing that he is no longer able to perform his past relevant work.  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001)).  The step four determination involves a comparison between the demands of the claimant's former work and his present capacity.  *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986).  A plaintiff cannot merely show that he is incapable of performing the particular job he once performed; he must prove that he cannot return to the same type of work.  *Id*. at 798.  If plaintiff is unable meet his burden, that burden remains with him rather than shifting to Secretary to proceed with step five.  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Although there are circumstances where VE testimony is necessary at step five, it is not required at step four.  *Id.* (explaining that when the burden remains with the claimant at step four, VE testimony is useful but not required).

A person is not disabled if they are able to perform their past work.  20 C.F.R. § 404.1502(f).  SSR 82-61 provides that there are three possible tests for determining whether or

not a claimant retains the capacity to perform her past relevant work.[6]   One of the tests identifies

that "where the evidence shows that a claimant retains the RFC to perform the functional

demands and job duties of a particular past relevant job as he or she actually performed it, the

claimant should be found to be 'not disabled.'"  SSR 82-61.  Another test is "[w]hether the

claimant retains the capacity to perform the functional demands and job duties of the job as

ordinarily required by employers throughout the national economy."  *Id*.

        In this case, ALJ Cusker found as follows:

        [VE] Chaparro testified that the claimant's past relevant work as a medical
        marketing sales director was medium as performed but sales manager is a skilled
        sedentary job according to the Dictionary of Occupational Titles; account
        executive and sales representative were performed as heavy, but the job of dental
        and medical equipment and supplies representative is listed as skilled light in the
        Dictionary of Occupational Titles; office manager is a sedentary skilled position
        as actually and generally performed; receptionist is semi-skilled sedentary.  The
        claimant's past relevant work as LVN is medium skilled work according to the
        Dictionary of Occupational Titles.
        In comparing the claimant's residual functional capacity with the physical
        and mental demands of this work, I find that the claimant is able to perform the
        job of office manager as actually and generally performed; she can also perform
        the jobs of sales manager and sales representative as generally performed.

AR 27.

        Initially, Plaintiff contends that the ALJ erred in finding she could perform her past

relevant work as an office manager as actually performed.  According to Plaintiff, she performed

that position as "a composite job, along with [the duties of a] receptionist and vocational nurse,"

and because she lifted in excess of twenty pounds, in light of the ALJ's RFC finding, she can no

longer perform that position as she actually performed it.  The Court is not persuaded that the

record supports her assertion this was "a composite job."  A review of the record reveals that

Plaintiff worked for a hearing aid dispensing company for a five year period between 1993 and

1998 and that she often entitled the job "recept/office manager/nurse" or similar.  *See* AR 260,

---

[6]SSRs are interpretations by the Social Security Administration of the Act.  While they do not have the
force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law.  The Ninth
Circuit has upheld the Secretary's interpretation of the Act embodies in SSR 82-40, which makes express what is
implicit in SSR 82-61.  *Quang Van Han v. Bowen*, 882 F.2d at 1457.

266-268, 277-278.  However, in a work history report dated November 26, 2008, Plaintiff

identified the position as "office manager."  *See* AR 248.  In the description related to that office

manager position (job title no. 8), Plaintiff stated as follows: "office manager for hearing aid

dispenser.  Appointment setting, typing, filing, hearing screenings in assisted living facilities,

retirement homes.  Supervised 1 person.  8 hrs day/5 days week."  *See* AR 255.

During the administrative hearing proceedings, Plaintiff's counsel provided the VE with a

copy of the work history report, and the ALJ identified the document as Exhibit 2E.  *See* AR 83-

84.  Exhibit 2E is the work history report of November 2008 wherein Plaintiff describes her

position as an "office manager" and her description of the position on that occasion did not

reference any particular weight to be lifted.  AR 248-255.

In an undated document at page 273 of the administrative record, Plaintiff references

heavy lifting by stating she worked in the medical field but not as a vocational nurse, and in that

capacity was required to lift heavy medical equipment like oxygen tanks, c-pap machines,

wheelchairs and audiometers.  At page 278, Plaintiff also indicated she completed client

paperwork and patient charts.

That being said, and assuming for the sake of argument that Plaintiff did in fact perform a

"composite job" that would require heavy lifting as she *actually* performed it, Plaintiff has failed

to explain how such an error requires reversal where the ALJ also found that Plaintiff could

perform the work of an office manager as *generally* performed.  As generally performed, an

office manager position is work performed at the sedentary level, and thus such work comports

with the ALJ's RFC finding.

Therefore, despite Plaintiff's arguments to the contrary, the ALJ did not err in finding that

Plaintiff could perform her past work as an office manager and his finding in this regard is

supported by substantial evidence.

Plaintiff asserts also that the ALJ's finding that she could perform the job of sales

manager or sales representative as generally performed was erroneous because the ALJ's

1   hypothetical question posed to the VE did not include her physical limitations.  More

2   specifically, the hypothetical did not include reference to her inability to bend or lift anything

3   over two to three pounds, to push or pull repetitively, and the requirements that she take

4   unscheduled restroom breaks and be permitted a sit/stand option.  (Doc. 16 at 29-30.)

5          Initially, the Court notes that the testimony of a VE is not required at step four of the

6   sequential analysis.  *Matthews v. Shalala*, 10 F.3d at 681.  Nevertheless, "[h]ypothetical

7   questions posed to the vocational expert must set out all the limitations and restrictions of the

8   particular claimant . . .."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).  The testimony of

9   a VE "is valuable only to the extent that it is supported by medical evidence."  *Sample v.*

10  *Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion about a claimant's RFC has no

11  evidentiary value if the assumptions in the hypothetical are not supported by the record.  *Embrey*,

12  849 F.2d at 422.  Nevertheless, an ALJ is only required to present the VE with those limitations

13  he finds to be credible and supported by the evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-

14  66 (9th Cir. 2001).

15         Plaintiff's argument lacks merit.  Here, ALJ Cusker did not find the limitations Plaintiff

16  references to be credible or supported by the evidence.  Hence, he was not required to present the

17  VE with the hypothetical posed by Plaintiff.  *Osenbrock v. Apfel*, 240 F.3d at 1165-66.  Rather,

18  the ALJ presented the VE with hypothetical questions that include the limitations and restrictions

19  he found to be supported by medical evidence.  *Cf.* AR 23-27 to 88-89.

20         In conclusion, the ALJ did not err in finding that Plaintiff could perform the work of a

21  sales manager or sales representative, as those positions fall within the sedentary and light work

22  categories respectively, and thus comport with the ALJ's RFC findings.

23                                **RECOMMENDATION**

24         Based on the foregoing, the Court finds that the ALJ's decision is supported by

25  substantial evidence in the record as a whole and is based on proper legal standards.

26  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

27

28                                        28

1  of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

2  Defendant Michael J. Astrue and against Plaintiff Cynthia Mayo.

3         These findings and recommendations will be submitted to the Honorable Lawrence J.

4  O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).

5  Within fifteen (15) days after being served with these findings and recommendations, the parties

6  may file written objections with the Court.  The document should be captioned "Objections to

7  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

8  objections within the specified time may waive the right to appeal the District Court's order.

9  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

10

11        IT IS SO ORDERED.

12     **Dated:   June 14, 2012**              **/s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                               29